# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL VALENTINE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GRANVILLE REALTY, INC., et al., <br><br> Defendants. | Case No. 1:25-cv-00844-KES-SAB <br><br> FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION <br><br> (ECF No. 9) <br><br> ORDER RE PLAINTIFF'S REQUEST TO CORRECT DEFENDANT INFORMATION IN SUMMONSES; DIRECTING THE CLERK OF COURT TO UPDATE THE DOCKET <br><br> (ECF No. 7) |

Pending before the Court is a motion for temporary restraining order and/or motion for a preliminary injunction filed by Plaintiffs Michael Valentine and Amanda Hubbard, who are proceeding *pro se*. The assigned district judge referred the motion to the undersigned for the preparation of findings and recommendations. (ECF No. 10.) Upon review of the motions, and the file in this case, the Court will recommend denying Plaintiff's motions for the reasons stated herein. Furthermore, the Court will direct the Clerk of the Court to update the docket in light of the amended complaint.

To begin, the Court notes that it does not write on a blank slate. Plaintiffs filed a substantially similar complaint previously in this Court on July 1, 2025. Valentine v. Granville

1  Realty, Inc., No. 1:25-cv-00798-KES-HBK (E.D. Cal.). In that matter, Plaintiffs also moved for
2  a temporary restraining order. Id. at ECF No. 4. The assigned magistrate judge issued findings
3  and recommendations recommending denying the motion; however, on July 3, 2025, Plaintiffs
4  filed an amended complaint along with an amended motion for a temporary restraining order. Id.
5  at ECF Nos. 7, 8. Before the Court had time to address these amendments, on July 11, 2025,
6  Plaintiffs filed a notice of voluntary dismissal, and the case was closed. Id. at ECF Nos. 14, 15.

On the same date that Plaintiffs filed their notice of dismissal, Plaintiffs filed their complaint in what is now the instant action before the Hon. Krik E. Sherriff and Hon. Stanley A. Boone. Valentine v. Granville Realty, Inc., No. 1:25-cv-00844-KES-SAB (E.D. Cal.). Between the two complaints, some styling has been changed, as well as some addition and subtraction to claims. However, the gravamen of factual allegations remains unchanged. With these observations, the Court discusses the merits of Plaintiffs' motions.

Preliminarily, for *pro se* Plaintiffs' benefit, the Court gives them notice that the effect of voluntarily dismissing this action would implicate Federal Rule of Civil Procedure 41(a)(1)(B), which states that "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits." In other words, if Plaintiffs voluntarily dismiss this action, it would operate as an adjudication on the merits with a final judgment—meaning Plaintiffs would be subsequently barred from raising the claims raised in both operative complaints again in a later filed action in federal court.

**I.**

**BACKGROUND**

Plaintiffs Valentine and Hubbard bring this Motion against Granville Realty, Inc.; Granville Property Management, Inc.; Granville Homes, Inc.; Grass Valley Investments, LLC; Triad Investments, LLC; Jeffrey A. Russell; Adriana Rivera; Daniel Falaschi; John A. Bezmalinovic; and Does 1 through 100. (ECF No. 8, pp. 6-7.) Plaintiffs allege a pattern of racketeering, housing fraud, and disability discrimination arising from their tenancy at 1371 N. Roosevelt Avenue in Fresno, California. (Id. at pp. 1, 6).

Valentine, a permanently disabled U.S. Army veteran, has resided at the subject property

1  since October 15, 2019.  (Id. at pp. 5-6).  On July 9, 2019, the Department of Veterans Affairs
2  prescribed an emotional support animal ("ESA") as medically necessary equipment to mitigate
3  Valentine's disabilities.  (Id.)  Plaintiffs allege that the property was unlawfully rented without a
4  Certificate of Occupancy, in violation of California Health and Safety Code § 17920.3, thereby
5  rendering the tenancy void *ab initio*.  (Id. at p. 10.)

6  On April 8, 2025, Valentine's ESA was diagnosed with terminal kidney failure, and
7  Defendants were informed of the crisis the following day.  (Id. at p. 22.)  Fourteen days later, on
8  April 23, 2025, Defendants issued a notice of sale initiating eviction proceedings.  (Id. at pp. 16-
9  17.)  Plaintiffs contend that the timing of the eviction demonstrates retaliatory intent and
10 disability-based discrimination in violation of the Fair Housing Act, 42 U.S.C. § 3604.  (Id. at p.
11 22.)

12 On June 2, 2025, Defendant Rivera allegedly admitted that the property could not be
13 legally sold without a Certificate of Occupancy, confirming Defendants' knowledge of the
14 property's unlawful status.  (Id. at p. 20.)  Plaintiffs further allege that Defendants fabricated
15 rental ledgers on June 8, 2025, after receiving a litigation hold notice on May 30, 2025—the
16 same day Valentine's ESA was euthanized.  (Id. at p. 17, 20.)

17 Plaintiffs assert that Defendants operate a criminal enterprise through a network of 49
18 shell entities registered to Defendant Russell and controlled by members of the Assemi family.
19 (Id. at p. 26.)  They allege at least 67 predicate acts of wire fraud and obstruction of justice,
20 including the use of interstate ACH/EFT rent collection and the transmission of falsified
21 documents.  (Id. at 21, 26, 27.)  Plaintiffs cite corroborating evidence from a separate RICO
22 lawsuit filed by a family insider, Kevin Assemi, and regulatory sanctions issued against Russell
23 and Assemi by FINRA and the California Department of Real Estate.  (Id. at pp. 8-9, 21.)

24 The motion predominantly seeks emergency injunctive relief; however, it is unclear what
25 Plaintiffs seek.  (ECF No. 9.)  Rather than request for anything specific, Plaintiffs state that
26 "[t]he Court must act now to prevent harm to a disabled veteran and preserve its ability to grant
27 meaningful relief against this criminal enterprise that thrives on regulatory gaps."  (Id. at p .12.)
28 That said, it appears Plaintiffs might be seeking an injunction enjoining Defendants from

practicing their 'criminal enterprise' and enjoining their removal from the subject property.  (Id. at p. 3.)  In support, Plaintiffs largely reiterate their amended complaint in a condensed fashion.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs injunctions and restraining orders, and requires that a motion for a temporary restraining order include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate, and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required."  Fed. R. Civ. P. 65(b).  This Court's Local Rules also set forth certain procedural mandates for a TRO to issue, including that the movant provide the following documents:  (1) a complaint; (2) a motion for TRO; (3) a brief on the relevant legal issues; (4) an affidavit to support the existence of irreparable harm; (5) an affidavit detailing the notice or efforts undertaken or showing good cause why notice should not be given; (6) a proposed TRO and provision for bond; and (7) a proposed order with blank for fixing time and date for a hearing.  Local Rule 231(c) (E.D. Cal. 2025).

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions, with the exception that preliminary injunctions require notice to the adverse party.  See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc., 181 F. Supp. 2d 1111, 1126 (E.D. Ca. 2001); see also Fed. R. Civ. P. 65(a).  Local Rule 231, however, requires notice for temporary restraining orders as well, "[e]xcept in the most extraordinary of circumstances," and the Court considers whether the applicant could have sought relief by motion for preliminary injunction at an earlier date.  Local Rule 231 (a)-(b) (E.D. Ca. 2019).  A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."  Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70, 415 U.S. 423, 439 (1974).

A temporary restraining order is "an extraordinary remedy" and may be issued only if

1  plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in
2  the absence of preliminary relief; (3) that the balance of equities tips in his/her favor; (4) that an
3  injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).
4  Plaintiff bears the burden of clearly satisfying all four prongs. Alliance for the Wild Rockies v.
5  Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). A TRO will not issue if plaintiff merely shows
6  irreparable harm is possible—a showing of likelihood is required. Id. at 1131. The injunctive
7  relief an applicant requests must relate to the claims brought in the complaint. See Pac.
8  Radiation Oncology, LLC v. Queen's Med. Ctr., 810 F.3d 631, 633 (9th Cir. 2015) ("When a
9  plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have
10 the authority to issue an injunction."). Absent a nexus between the injury claimed in the motion
11 and the underlying complaint, a court lacks the authority to grant plaintiff any relief. Id. at 636.

### III.

### DISCUSSION

**A.    Procedural Deficiencies Under Local Rule 231 and Rule 65(b)**

Plaintiffs' application fails to comply with the procedural requirements governing *ex parte* temporary restraining orders. Under Rule 65(b)(1), a court may issue a TRO without notice to the adverse party only if: (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result . . . before the adverse party can be heard in opposition," and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Plaintiffs have not satisfied either of these requirements.

Additionally, Local Rule 231(c) requires that a TRO motion be accompanied by, *inter alia*, "an affidavit detailing the notice or efforts to effect notice to the affected parties or counsel or showing good cause why notice should not be given." Plaintiffs' affidavits again seemingly admit that they did not attempt to notify any Defendant, nor do they offer any reasonable explanation as to why notice should be excused. (See Doc. No. 9, pp. 13-20.)[1] The absence of

---

[1] Plaintiffs suggest that Defendants, if given notice, will create new shell entities, transfer properties, accelerate an eviction, or escalate harassment. (ECF No. 9, p. 20.) Even taking these allegations as true, this would not justify the Court entering a TRO, an extraordinary remedy, against Defendants that affects their rights. Moreover, while not

this showing is fatal to their request. Tucker v. Fed. Nat. Mortg. Ass'n, No. 2:13-cv-01874 JAM-AC, 2013 WL 5159730, at *1-*2 (E.D. Cal. Sept. 12, 2013) (denying TRO where plaintiffs failed to provide notice or justify its absence under Rule 65(b) and Local Rule 231); see also Genesoto v. Ryan Remington the Mortg. L. Firm, No. No. 2:19-cv-00282-KJM-AC, 2019 WL 633465, at *1 (E.D. Cal. Feb. 14, 2019) (denying TRO where plaintiff failed to satisfy Local Rule 231 requirements).

Accordingly, the Court finds that Plaintiffs' failure to comply with Rule 65(b) and Local Rule 231 warrants denial of their Motion. Likewise, Plaintiffs have failed to comply with Local Rule 231 regarding notice and timing for a motion for a preliminary injunction.

**B.     Likelihood of Success on the Merits**

Putting aside the procedural deficiencies, the motion is in any event without merit. Plaintiffs assert claims under the Fair Housing Act, the Civil RICO statute, and various state law theories, including retaliatory eviction. However, the record before the Court does not establish a likelihood of success on these claims sufficient to warrant emergency injunctive relief. First, while Plaintiffs allege that the subject property lacks a Certificate of Occupancy and is therefore unlawfully rented, they have not cited binding authority establishing that such a deficiency alone renders the lease void or entitles them to immediate injunctive relief. See Gruzen v. Henry, 84 Cal. App. 3d 515, 519 (Cal. Ct. App. 1978) (recognizing that lack of occupancy certificate may support damages but does not necessarily preclude an eviction order).

Second, although Plaintiffs allege that the eviction was retaliatory and timed with the terminal illness of Plaintiff Valentine's ESA, they have not demonstrated that the eviction was initiated in response to protected activity or that Defendants lacked a legitimate, non-retaliatory basis for the notice. See Wood v. City of Hayward, 974 F.2d 1344 (9th Cir. 1992) (affirming denial of TRO where eviction followed lease termination and parallel state proceedings were pending, and where federal injunctive relief was barred under Younger abstention).

Third, Plaintiffs' RICO allegations, while extensive, rely heavily on conclusory

---

highlighted by Plaintiffs, since their last lawsuit, their alleged deadline for eviction has been continued to September 9, 2025, (see id.), which only further counsels that Defendants would have time to appear and defend against Plaintiffs allegations.

6

assertions of wire fraud and enterprise conduct. Courts have routinely denied TROs where claims are speculative or unsupported by concrete evidence. Salazar v. Moynihan, 2:11-cv-03276-GEB-KJN, 2011 WL 6179262, at *2 (E.D. Cal. Dec. 12, 2011) (denying TRO where plaintiff failed to demonstrate how alleged fraud caused the eviction and failed to provide facts sufficient to support the claims or justify emergency relief).

Accordingly, Plaintiffs have not shown a likelihood of success on the merits sufficient to justify issuance of emergency injunctive relief.

### C. Irreparable Harm

Plaintiffs argue that eviction would result in homelessness, health risks, and the loss of housing stability for a disabled veteran. (ECF No. 9, pp. 15, 20). While the Court does not minimize the seriousness of these concerns, Plaintiffs have not demonstrated that the alleged harm is imminent or irreparable in the absence of a TRO. The original eviction notice was issued on April 23, 2025, and the TRO motion was filed on July 1, 2025—nearly ten weeks later. Plaintiffs offer no explanation for this delay. (Now, Plaintiffs eviction date has been continued to September 9, 2025.) Under Local Rule 231(b), undue delay in seeking injunctive relief may contradict allegations of irreparable injury. See Sirrum v. Tomkinson, No. 2:13-cv-00986 TLN-CMK, 2013 WL 12121214, at *1-*2 (E.D. Cal. May 21, 2013) (denying TRO where plaintiffs delayed and failed to show urgency); Salazar, 2011 WL 6179262, at *1 (same). Moreover, Plaintiffs have not shown that they lack alternative housing options or that the alleged harms cannot be addressed through monetary damages or subsequent legal remedies. See Wendt v. Smith, 2003 WL 21750676, at *3 (C.D. Cal. Jan. 30, 2003) (holding that eviction from property to which plaintiffs had no legal title did not constitute irreparable harm); see also Tucker, 2013 WL 5159730, at *1 (noting "federal courts lack jurisdiction to review the propriety of state court rulings, including a Writ of Possession rendered during the course of a state court unlawful detainer proceeding.").

### D. Balance of Equities and Public Interest

While Plaintiffs face potential hardship, Defendants have a legitimate interest in enforcing lease terms and recovering possession of the property. Plaintiffs have not shown that

7

Defendants' conduct violates any court order or statutory prohibition. See Salazar, 2011 WL 6179262, at *2 (denying TRO where plaintiffs failed to show that defendants caused the alleged harm or that equities favored injunctive relief). The public interest does not favor federal intervention in what appears to be a landlord-tenant dispute governed by state law and subject to ongoing or available state court remedies. See Younger v. Harris, 401 U.S. 37 (1971); Newell v. Rolling Hills Apartments, 134 F. Supp. 2d 1026, 1039 (N.D. Iowa 2001) (applying Younger abstention in eviction-related TRO request).

In summary, the undersigned finds that this case does not involve extraordinary circumstances warranting the issuance of a temporary restraining order and will recommend, for all the reasons set forth above, that the assigned district judge deny Plaintiffs' motion. For the same reasons, the Court will also recommend denying Plaintiffs' motion as to their request for a preliminary injunction.

### E.   Plaintiff's Request to Correct Defendant Information on Summonses

On July 11, 2025, Plaintiffs Michael Valentine and Amanda Hubbard, proceeding *pro se* and having paid the filing fee, commenced this action. (ECF No. 1.) On July 22, 2025, Plaintiffs filed a first amended complaint ("FAC"). (ECF No. 8.) The Defendants named in the FAC are: (1) Granville Realty, Inc.; (2) Granville Homes, Inc.; (3) Grass Valley Investments, LLC; (4) Triad Investments, LLC; (5) FFDA Properties, LLC; (6) Jeffrey A. Russell, as registered agent and general counsel; (7) John A. Bezmalinovic, as registered agent and general counsel; (8) Adriana Rivera as Granville Supervisor; and (9) Danielle Falaschi as Granville Agent. (Id.)

Plaintiffs simultaneously filed the instant "request to correct Defendant information in summonses" with its FAC. (ECF No. 7.) Therein, Plaintiffs request that two Defendants named in the initial complaint—Granville Property Management, Inc. and Melissa D'Ambrosi—be removed and three defendants—Triad Investments, LLC, FFDA Properties, LLC, and Danielle Falaschi—be added. Plaintiffs also note they have amended the complaint to name "James Allen Russell" as "James A. Russell." On July 24, 2025, the Clerk of the Court added Defendants Triad Investments, LLC, FFDA Properties, LLC, and Danielle Falaschi to the docket and issues summonses. (ECF No. 13.)

Under Rule 15(a)(1)(B), "[a] party may amend its pleading once as a matter of course no later than: (a) 21 days after serving it . . . ." Fed. R. Civ. P. 15(a)(1)(A). "[A]n amended complaint supersedes the original, the latter being treated thereafter as non-existent" and as no longer performing any function in the case. Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015). Given that Plaintiffs are *pro se*, the Court emphasizes to Plaintiffs that the Federal Rules of Civil Procedures allow for amending a complaint "once as a matter of course." Fed. R. Civ. P. 15(a)(1)(A). In other words, Plaintiffs may not simply file a second amended complaint. Rather, they will need to move the Court for leave to amend or obtain a stipulation from Defendants. Fed. R. Civ. P. 15(a)(2).

In light of the foregoing, the first amended complaint has become the operative complaint in this action and the Court shall direct the Clerk of Court to amend the docket in conformance with the FAC.

## IV.

## ORDER AND RECOMMENDATION

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court is DIRECTED to:

1. Terminate Defendants Granville Property Management, Inc.; Melissa D'Ambrosi; and Darius Assemi as Defendants in this action as these parties are not named as defendants in the First Amended Complaint (ECF No. 8);

2. Amend the docket to reflect Defendant "James A. Russell" is a named Defendant and issue an updated summons; and

3. This order disposes of ECF No. 7.

FURTHERMORE, IT IS HEREBY RECOMMENDED that Plaintiffs' motion for a temporary restraining order, and/or preliminary injunction, (ECF No. 9), be DENIED.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The

9

1  district judge will review the magistrate judge's findings and recommendations pursuant to 28
2  U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified
3  time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th
4  Cir. 2014), citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **July 24, 2025**

STANLEY A. BOONE
United States Magistrate Judge